May it please the Court, William Harris. I represent the petitioner Lauren Young, who is doing 25 to life for shoplifting with a prior. In this case, I want to make sure to clarify what constitutional violation we're asserting. And the constitutional violation is a violation of the impartial jury clause of the Sixth Amendment, as determined by this Court in Sanders v. Lamarck, which I believe is the controlling case that should decide this appeal. The facts of Sanders v. Lamarck are remarkably similar to this case, where there was an 11 to 1 split. The holdout was having problems with the evidence. There was pressure from the other 11. And the holdout offered to just bail on the case to solve the problem. That's pretty much dead on what happened in this case. On habeas review, we have held that the fact that the State trial judge knew that a juror was the lone holdout did not by itself invalidate the trial judge's decision to excuse the juror of the cause. Yes. That's the Perez case, Your Honor. And what I read from Perez in the — The Perez case, but it's also the Sanders v. Lamarck case. Yes. Well, so the question is, what are the plus factors? If you — the way I read that is, standing alone, the fact that you've got a holdout juror doesn't invalidate — doesn't invalidate the order removing that juror for cause purportedly. So what are the plus factors? You've got to have some — The issue for me was more — maybe it's the wrong issue, but was she actually a holdout? Had she already voted the other way? And that's what I — it wasn't clear to me what was happening. It sounded to me like she had — she had voted one way, and then she changed her vote — Yes. — to an acquittal. Yes. Here's — what happened in the room was as follows. First of all, the holdout was not the first one to inject sentence into the analysis. Everybody came in there, and the evidence was, after the judge was inquiring, that the consensus was, you know, what are we wasting our time here for? This is a misdemeanor. This is petty theft. Let's just get on with it and stop wasting our time. Juror 9, the holdout, initially was willing to subordinate — the way I read this record, she was initially willing to subordinate her problems. She had some problems with the evidence, but, oh, what the heck? It's a petty — petty theft. You know, she'll go along with it. She'll subordinate her problems with the evidence. Then in comes the form that says felony. And having some extrinsic knowledge of the law, she says, well, wait a minute. And she was right. This is a third strike. This could be a third strikes case. And apparently the defendant had mentioned strikes on the stand. He did. So he, to some extent, I suppose, set the stage for this by injecting that issue. So the strikes was in the case. But the holdout then said, well, wait a minute. You know, we've got to look at this a little bit more closely here. If this is a third strike, suddenly this is a more interesting, significant game we're playing here with the man's life. What's your point? The point is that there's — I was asking a simple question. Did she actually switch her vote to an acquittal vote, or was she just a holdout? She switched from originally willing to go along to acquittal. Yeah. This is not a case where a juror says, I'm not voting guilty because I'm just not persuaded. And then they kick that juror off. This is a case where the trial judge makes a finding that juror number nine is unable to follow instructions. Under ADIPA, you've got a couple of very high hurdles to clear. You have to demonstrate to us that the factual finding here is unreasonable. And we give special deference to a trial judge's view of jurors in a case. Why was it unreasonable? I mean, I've read the colloquy, and it appears pretty clear to me from the colloquy that this woman was saying, you know, under the circumstances, I just can't do this. I won't follow the law. Well, the way I wrote the brief, we're going under the contrary to clause of ADPA rather than the unreasonable determination clause. There's no Supreme Court case that I've ever seen that says you can't kick a juror off and says, I'm not following the law. Well, if that's — I mean, what Supreme Court case is that? Sanders indicates — Sanders indicates the Supreme Court case is Brasfield v. United States v. Burton v. United States, these old cases, that that is the controlling law under the impartial jury clause. So I understand what the Court is saying, but I'm not going under the unreasonable determination clause. I agree, that's a pretty tough hurdle. So what's it contrary to? It is contrary to Brasfield v. U.S. and Burton v. U.S. interpreting the impartial jury clause of the Sixth Amendment as determined by this Court in Sanders. Now, Sanders itself is not a Supreme Court case, but I can use Sanders to identify the controlling rule. And the controlling rule — But Sanders, again, is a holdout case. It's somebody who simply says, I'm not persuaded. Well — And this seems to me to be a much different case. Sanders — Somebody who says, I am persuaded, but I'm not going to do it because I don't like the consequences. Sanders was different because it was an unreasonable determination clause case, based on the finding of untruthfulness. Sanders was — the lady supposedly was being less than candid about her prior residence in Ladera Heights, and the kid had a gang affiliation. And they're saying basically the lady — the State judge found that the lady lied, and this Court said, no, no, she answered the question and she was right. So Sanders is — the methodology in Sanders went under the unreasonable determination clause. Here — Now, what about this one? And I suspect you had decided you had something to say about this way of looking at the evidence. What about this one? She testifies, well, you know, when we thought it was a misdemeanor, the evidence was kind of slender. The evidence really was whether we could see the straps in the window in the reflection. And I went along with it. But on reflection, now that I'm treating this seriously, as I had not treated it seriously when I thought it was a misdemeanor, I am not persuaded. That's exactly what happened. That's what we assert. So that makes — so that makes her into a holdout, saying, you know what, I irresponsibly voted the first time around because I thought this was a — I thought this was a nickel-dime case. But now that I realize this is not a nickel-dime case, now that I'm taking my responsibilities seriously, I'm not persuaded. Is that going to work? Okay. I think that's your best shot. Is it going to work? Well, that — Thank you. I was using the wrong terminology. I think we can — we can agree that she decided that this wasn't proved beyond a reasonable holdout, or she wasn't going to — That's right. Okay. She was the — she was — she said, let's look at this thing frame by frame. And you remember the facts of the case was — Okay. I guess — assume that she is a true holdout. She wants to vote for acquittal. Yes. She's not just sitting on the fence there. She said, that's my verdict. And the question is, does that get you over the hump? The hump? Well, it gets you over the hump. If it stopped right there, no. Because that's what — the way I read Perez v. Marshall, standing alone, that doesn't get you there. So then it's like, what additional plus factors here takes it beyond simply that? And first of all, plus factor number one, the majority was already considering penalty. That's the — we're saying this judge should have declared a mistrial. The majority from the get-go was considering penalty. Number two, the court itself injected the error. This wasn't extrinsic evidence brought in by a juror. The court itself, and it admits it screwed up, it injected the error itself. And this lady was just responding to the error determined — injected by the court. That's plus factor number two. And plus factor number three was the way that this lady used the penalty — the penalty knowledge that she had. And the way she used it was not irresponsibly to just say, I can't convict here. It's, folks, let's take a look at this again, frame by frame. Did the guy cross the threshold or not? Let's look at this videotape, which is really the linchpin evidence. And so the use of that evidence by the — by her was — I would submit that's a wholesome and proper reaction. So those — those are the three plus factors that say we're not simply standing on her holdout status. That gets you over the hump, to use your Honor's term. Was there a standard instruction in this case that the jury shall not consider penalty or punishment in arriving at its decision? I'm sure there was. That's pretty standard. And I think that was the basis of the judge's questions, you know, can you follow that? And in this case, I think, like I was saying in brief, the problem she was having is that the third plus factor I mentioned was that she was using penalty to go back and focus on the evidence. So the question is, how do you unring the bell? And I think she was having a hard time saying, well, now that I know this is an important game and we've got to look at this frame by frame, I don't know if I can put that out of my mind. Well, and the question may be, when is she disregarding the instruction not to consider penalty? When she voted to convict, when she thought it was just a misdemeanor and all this doesn't matter. Or when she voted not to convict, when she said, you know what, this is serious. I mean, maybe she was disregarding the instruction the first time and not the second time. That's the irony of this, is that basically when she got the penalty information, then she refused to go along with the majority who was considering penalty from the get go. So look at this, she's not following the instructions. Is that right? Well, she's following instructions the second time around. Maybe. What should have happened here is the judge should have declared a mistrial. It wasn't an alternative to, you know, we've got to go with it. I think he should have declared a mistrial too, but I don't know that that wins you the day. Well, I think it does because there was a way out. I mean, the correct thing to do is we have a hopelessly muddled situation here where the court screwed up. The court injected the error. You've got a conscientious juror reacting as ethically best she can to that in a wholesome way, and you've got 11 to 1 ganging up on this lady. And the judge explored it pretty thoroughly with bringing everybody out, and he just should have declared a mistrial would have been the correct thing, constitutionally correct thing to do. It's hard for me to see that he's totally out of the ballpark here. He's seeing this as, okay, now she's, here's somebody who's just totally refused to follow my directions. And in a way, that's true. It's just that if you twist it around, she's also, you know, maybe so are all the rest of the jurors. So, I don't know. Under the ADEPA standard, is this really enough? Well, under the, the question goes back, is it contrary? I'm going under the contrary to clause. I think with the contrary to clause, taking into account both the Perez versus Marshall case and the Sanders versus Lamarck case, as it determines this impartial jury clause mandate in the Constitution, you take those, and the way I read it, is you've got to have these plus factors. You can't just stand and hold out status, and those are the plus factors. We've heard this already. I think we have your argument in hand. Let's hear from the State, and then we'll give you a chance to respond. Good morning. May it please the Court. David Wildman, Deputy Attorney General for the Warden. This is an ADEPA case. Petitioner, to get relief, has to show you the unreasonable application of U.S. Supreme Court law, which you can't show. There's no Supreme Court law which says simply because there's a holdout juror that can't be dismissed for misconduct. Are you saying that Sanders is wrong? No. Sanders is still good law. This is not Sanders, though. Because? Because Sanders is a case where the trial court made a finding that the juror there could be fair and impartial. Then they went and then after that, the trial judge made that finding, which the trial judge never made in this case. The prosecutor apparently went and looked at some of the facts that came out in Chambers and said, you know, the voir dire wasn't completely honest. And really, it's a coughed sell on that case because they really had to parse through that voir dire to get to that. That's not here. Okay. What did the trial judge in this case find? The trial judge in this case found that juror number 9 was refusing to follow a law. The trial judge asked her and I repeatedly in several different ways, can you put penalty out of your mind? Can you say, if not guilty is your verdict, can you just say that whether it's a felony or a misdemeanor and come to that conclusion and follow the law? And she never said, Your Honor, I can follow the law, I can put penalty or punishment out of my mind, and I still believe it's not guilty or a reasonable doubt. Never said that. She said a lot of different things. Put my nose in not the questioning, but the trial court's finding. I mean, I understand the questioning. I want to focus and we can maybe look at it together. What did the trial judge specifically find as to what was going on? Well, my understanding is the trial judge found that this particular juror. Yeah, I know. We've got a record. Where is it? I believe it'd be an RT 302 to 303. I'm not sure what page of the excerpts that is. Oh, but you're going to win or lose this case, I think, based upon what the trial judge found. Right. And so, okay, but I'm left on my own to find it. Okay. It would be RT page 315 to 318. And I don't have the actual record. I have the excerpts. I don't know that that's in the excerpts. My excerpts go from. My belief based not on what she said, but how she said it. And I'm not saying that her feeling is wrong. The penalty. I mean, we can all debate that. That's not the issue. I truly believe that if she knows this is a third strike case, she would never vote guilty in any case. And that's impractical to consider penalty and punishment. Is this what you're talking about? What page of the record is that? 54, 53 and 54. So again, in summary, any decision she made is based on information I indicated she can't consider. She told all the jurors she couldn't put that out of her mind. She can't follow the law. And she couldn't tell me she would follow my instructions. For that reason, she's excused over defense. Is this what you're talking about in terms of it's supported by the fact and not contrary to federal law? Yes, Your Honor. That's it? 53, 54 and 55. You know, I was not trying to be obstructionist. I wanted to read it because I think you win or lose based on what's in right here. Certainly. And what stands out about this case is that the trial judge didn't simply say, well, you didn't answer the question correctly, goodbye. He repeatedly asked this juror over. This is quite different from what opposing counsel said. The trial judge is finding here that she had no problem voting guilty on the evidence before she found out the penalty that was involved. He said that she had a problem, but she put it aside. Is that true or not? Well, the record shows that juror nine originally voted guilty. They all voted guilty. They rang the bell, said we have a verdict, and then apparently changed their mind. And so the record shows nothing about her having any doubts about the evidence? I believe that in the in-chambers – not the in-chambers, but she was being questioned by the court. She did say something to the effect that she had some doubts, but she kind of went along because it wasn't that important. I believe that is in there, Your Honor. The court of appeal affirmed the trial court. She refused to agree to follow the trial court's instructions. I would certainly submit that this case, under the ADPA, Petitia hasn't made the burden that this is an unreasonable determination of the facts. Certainly, it's a reasonable determination based on everything that the trial court set forth in the record here that this juror was not able to follow the law. And for that reason, it's really just like Perez v. Marshall rather than Sanders v. Lamarck. Sanders v. Lamarck, as I previously said, is a case where the court said – the trial court said the juror could be fair and impartial. This is not such – this is not that case. Any further questions from the panel? I don't mean to hurry. If there are no further questions, I would submit. Thank you. Response? I think I can maybe help zero in the court on the part of the record that we're looking for. On Excerpt 29, Juror No. 9, her first statement was as follows. We went in there and we all had questions about – we all had questions about that bag and the reflection. That was the bottom line. We watched the whole film up to the very end, and we just couldn't tell. Then we got to the point where we do see a reflection. Maybe that is a bag. It was like, this is a misdemeanor. Okay, he shouldn't do it again. Fine. Page 29 of the excerpt, if I read that, it says she was having some problems with the evidence from the get-go, and the others did, too. And so she subordinated it. But then what do you do with the fact that the judge, having heard her say this, says what he says on the pages that we just had our attention drawn to? Well, 52 of the excerpts, I think, is the captures that the judge says, It's clear to me from all the evidence that I've heard that Juror No. 9 cannot avoid considering a penalty of punishment in her deliberations and can't follow the court's instructions, and because it exists to excuse her. My argument is that under the contrary to clause, that completely takes out of the analysis the holdout status and the Sixth Amendment analysis. That's just that it was decided under Penal Code Section 1089. 1089 is the State statute that says we are, you know, if they can't follow the instructions, in other words, if they can't discharge their function of a juror, they're out. Okay. The rule applied by the State court was 1089. And if you go to the State court's ruling, they said, okay, we've got a Sixth Amendment problem here, and the court of appeals said this. They answered the Sixth Amendment problem by applying Penal Code Section 1089, which says nothing about the status of the juror. My argument under the unreasonable application clause is that the Sixth Amendment unreasonable application clause inserts on AEGPA a new and different standard, and the standard is you've got to consider as part of the mix the fact that she's the lone holdout juror. That's what Sanders says. Sanders says that comes into the analysis. See, here's part of the problem. The case isn't over yet when all of this happens. The judge is just sitting there, and the whole thing triggers. Okay. Now, she's got to either, the case either goes or it doesn't go, because now it's 11 to 1, we know, and so she's got to go back in there, and she's saying, I won't follow the law. That's the factual finding. So, how can he send her back in if she's saying, now I'm in a frame of mind where I just, I can't follow the law? I don't think, well, she didn't really say that. She said, I don't know. I don't know what I can do. I read the whole thing again for the third time. She says, it's too much, it's too much. So, he makes a factual finding, and they bring in juror number one, and juror number one corroborates that she just can't follow the law. It's not as though she says, I want to go back in there. She says, let me out of here. Yeah, that's exactly what happened in Sanders v. Lamarck. I mean, she didn't want to face the heat of the thing. She had just put in the alternate, and the alternate convicted in about 10 seconds after the alternate. I just don't see anything where the Federal law says you can't remove a juror who says, I can't or I won't follow the law. That's, the thing that's bothering me is that I seem to, I was focusing on whether it was really all over, and then she's removed. And that's what I was trying to get out with my wrong questions. But it seems to me, if the judge is saying it's not really all over, you know, yeah, she took a vote and came out this way. Maybe it's 11 to 1, but are they really finished reviewing the evidence? So, you know, at that point, probably would have to send him back for further deliberations. It wasn't really all over. And so how can he send her back if it's not really all over? So that's why that was key to me, whether it was all over and he replaced her or. But she says, I'm willing to try. He sends her back. She didn't say, well, she didn't say that. That's the record we have. But then the. She says, I want out of here. And I can't. At that point, so then I think the question is, at that point, does the Constitution require a mistrial? But is that the issue before us? I think it is. It's just like you did. Was there a constitutional violation? And in this case, by dismissal, the dismissal was. Refresh my recollection. Was there a motion for mistrial? There was. It was. The dismissal was over defense objection. Motion for mistrial denied page. Well, I can give you the page. But yeah, Ben Kanji was the name of the attorney. He made the motion for mistrial. Motion for mistrial denied. And that was the alternative. So the court had a way out. The court screwed up the clerk by creating the problem. The juror had a, you know, it's like some sort of, you know, Le Carre novel, where there's mixed motives here. And ironic. Where in the habeas petition here is the issue identified that it's the failure to grant the motion for mistrial? The layman did not articulate it in those terms. He said dismissal of juror number nine was a Sixth Amendment violation. I mean, that's about it. There was no evidentiary hearing. You got a layman drafting a petition here. So he identified, there's no claim it wasn't exhausted. He identified the Sixth Amendment and the dismissal of juror number nine over objection. And that's as far as it went. Thank you. Thank you. Okay. I appreciate your willingness to step in and pick this case up at this stage of the game. It's a nice job of argument, and we appreciate it.  It's very difficult to have to deal with something you weren't given an opportunity to construct yourself, just like your earlier comment. You know, sometimes it's nice to make the record in the trial. And sometimes it's awkward because you, time and again, this is a different case. I see the lawyers, I want to know what happened at trial, and sorry, I wasn't at trial. I can't tell you, Your Honor. I mean, sometimes it cuts the other way. Okay. Thank you very much. Young v. Duncan is now submitted for decision. That's the last case on our argument calendar today. And for the week, we are now in adjournment. Thank you very much. All rise, this court is adjourned.
judges: Trott, W. Fletcher, Restani